**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**DMITRY VOLOVIK,**

Plaintiff,

v.

**CHIRON DIAGNOSTICS CORPORATION, a North Carolina Corporation, and BAYER CORPORATION, an Indiana Corporation,**

Defendants.

Civil No. 01-1426 (JEL/JGL)

**ORDER**

APPEARANCES

Thomas Hamlin, Esq., and Becky Thorson, Esq., for Plaintiff.

William Dossett, Esq., and Gary Levin, Esq., for Defendants.

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on May 24, 2002 on Plaintiff's Motion to Compel Discovery (Doc. No. 40), Plaintiff's Second Motion to Compel Discovery (Doc. No. 51), Defendants' Motion to Compel Plaintiff to Answer Interrogatories and Produce Documents (Doc. No. 45), and Defendants' Motion to Compel Third Party Lindquist & Vennum to Produce Documents in Response to Subpoena (Doc. No. 48). The case has been referred to the

JUN 1 1 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. PLAINTIFF VOLOVIK'S FIRST MOTION TO COMPEL DISCOVERY

Plaintiff Dmitry Volovik ("Volovik") is the owner of U.S. Patent No. 5,540,562 ("the '562 patent"), which is a fluid displacement pump for use in an immunoassay system. An immunoassay system includes a series of such pumps, which measure and combine sample fluids with reagent to perform diagnostic tests. Defendant Bayer Corporation's immunoassay system, the Centaur, uses at least ten pumps that Volovik claims infringes the '562 patent. When a Centaur is leased or purchased, the user is required also to purchase reagent kits and other consumable supplies.

Volovik's first motion to compel is directed to obtaining information purportedly relevant to his damages. Volovik seeks responses to Document Requests No. 48, 49, 50, 52, 53, 54, 57, 60, 62, and 69 of his First Set of Requests for Production of Documents; Document Requests No. 70, 71, 72, 74, 75, 76, 77, and 78 of his Second Set of Requests for Production of Documents; and Interrogatories No. 28 and 29 of his Second Set of Interrogatories. The Court notes that Volovik did not comply with Local Rule 37.2, which requires the moving party's memorandum to set forth for each discovery request at issue, "a concise recitation of why the response or objection is improper." D. Minn. LR 37.2. Because of the noncompliance, the Court is unable to

synchronize the specific requests at issue with Volovik's various arguments. For this reason, the Court will depart from its standard analysis and address the motion in broad fashion, as Volovik did in his memorandum and oral argument, without reference to specific interrogatories or document requests.

The issue before the Court, then, is whether Volovik is entitled to discover marketing, sales, leasing, and revenue information of the entire Centaur system, including information about the reagent and other consumable supplies sold or leased as part of the system. Bayer contends that only information relating to the allegedly infringing pump is relevant and discoverable. Bayer further states that it has provided a summary of the evidence Volovik seeks, but Volovik desires the original source documents. If the Court finds that Volovik is entitled to discover information about the entire Centaur system, the Court must then decide whether Volovik may obtain the requested information on a worldwide scale.

The Federal Rules of Civil Procedure contemplate liberal discovery; the information sought only need be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U.S. 495, 501 (1947). A party is allowed to explore matters relevant to the claims and defenses in a case. See Fed. R. Civ. P. 26(b)(1). In the context of discovery, "relevant" has been defined as encompassing "any

matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Hickman, 329 U.S. at 501. Rule 26(b)(1), as amended in 2000, gives courts "the authority to confine discovery to the claims and defenses asserted in the pleadings," but recognizes a court's discretion to permits broader discovery depending on the particular circumstances of a case. Fed. R. Civ. P. 26(b)(1) advisory committee's note (2000).

In this case, Volovik claims the discovery at issue is relevant to his claim for damages. Volovik first asserts that the "entire market value rule" permits a party to recover "'damages based on the value of an entire apparatus containing several features, even though only one feature is patented.'" Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1552 (Fed. Cir. 1997) (quoting Paper Converting Mach. Co. v. Magna-Graphics Corp., 745 F.2d 11, 22 (Fed. Cir. 1984)). However, Volovik neglected to cite the subsequent sentence in Fonar, which sets forth a pivotal qualification to the rule. The patented feature must be "the basis for customer demand for the entire machine." Id. (citing Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1549 (Fed. Cir. 1995) (en banc)). Here, Volovik has not shown that the allegedly infringing pumps are the basis of customer demand for the Centaur system. While it is true the Centaur is marketed as a precise and efficient machine capable of performing up to 240 tests in an hour, (Thorson Aff. Ex. O at 32), the Court cannot stretch this

statement to mean that the pumps are the one feature that causes the precision and efficiency so as to create the basis for customer demand. Furthermore, Volovik has not shown that customers of the system know what pumps are included or that customers based their purchasing decision on the pumps. The marketing materials submitted by Bayer, on which Volovik also relies for his position, tout features unrelated to the pumps such as "No daily startup" and "No-pause reloading," which presumably rely on the system's internal computer, and "On-board refrigeration" and "Automatic cleaning." (Dossett Aff. Ex. 4 at 2.)

Moreover, the Court accepts Bayer's representation, to which Volovik did not respond, that other "admittedly noninfringing" pumps would work equally well in the Centaur system. Thus, it can fairly be said that the allegedly infringing pump itself is not the basis of customer demand if similar pumps could be substituted without affecting customer demand. Volovik is not entitled to discover information about the entire Centaur system, reagent, or other consumable supplies sold or leased as part of the system.

Volovik next argues that he would be entitled to a reasonable royalty under 35 U.S.C. § 284 if he proves infringement. Volovik cites one particular factor considered in determining a reasonable royalty: "The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of

sales of his non-patented items; and the extent of such derivative or convoyed sales." Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (emphasis added). The Federal Circuit has likewise recognized that collateral sales could be a factor in determining a reasonable royalty rate. See State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1580 (Fed. Cir. 1989) (citing Deere & Co. v. Int'l Harvester Co., 710 F.2d 1551, 1559 (Fed. Cir. 1983)). In Mor-Flo, the collateral sales were relevant because the infringing product "was used to promote Mor-Flo's entire line of heaters." Id. In this case, however, Volovik has not shown that the allegedly infringing pumps were used to promote the entire Centaur system, and consequently, he has not established that convoyed sales information would be relevant to his damages claim. The Court notes that Georgia-Pacific enumerates fifteen factors possibly relevant to determining a reasonable royalty. See 318 F. Supp. at 1120. Not all the factors are necessarily applicable to a determination. See, e.g., ITT Corp. v. United States, 17 Cl. Ct. 199, 229-31 (1989). Here, Volovik has not established the applicability of convoyed sales information to his damages calculation, and the fourteen remaining Georgia-Pacific factors will have to suffice in determining a reasonable royalty. Moreover, even if convoyed sales could be considered marginally relevant to Volovik's damages claim, the summaries already produced by Bayer provide sufficient information.

Volovik is not entitled to discover information about the entire Centaur system, reagent, or other consumable supplies sold or leased as part of the system. Because Volovik is not entitled to discover information about the entire Centaur system, the Court need not reach the issue of whether Volovik would be entitled to discovery of the information on a worldwide scale. Volovik's first motion to compel is denied in its entirety.

## II. VOLOVIK'S SECOND MOTION TO COMPEL DISCOVERY

At the motion hearing, Volovik narrowed this motion to three requests: (1) technical documents describing the Centaur system and the documents Bayer submitted to the FDA, (2) the electronic manual for the Centaur system, and (3) repair records for the Centaur system. Bayer represented that it will provide the repair records, and this request is therefore moot.

Volovik contends he needs the technical documents and electronic manual to understand how the Centaur system works and how the allegedly infringing pumps function within the system. Volovik relies on the "entire market value" theory of damages to establish the relevance of this information. However, as discussed in Part I, Volovik has not shown that the allegedly infringing pumps are the basis for customer demand for the Centaur system, and thus, he has not established that information about the entire Centaur system is relevant to his theory of damages. Volovik's memorandum is replete

with conclusory statements that he is entitled to the information requested; however, other than the damages theory, Volovik does not relate the discovery sought to the claims and defenses in this case. The Court will not assume relevance.

The Court also finds Volovik's requests overbroad and unduly burdensome. Volovik has not shown that information about reagents or immunoassay tests and procedures is relevant to his lawsuit over a single, allegedly infringing component of the Centaur system. In addition, Bayer persuasively maintains that Volovik's requests encompass virtually document generated in the course of business of Bayer's entire laboratory testing business unit. The Court agrees that Volovik is entitled to explore a limited number of documents depicting an overview of the Centaur's operation and how the accused pumps work within the system, and this information has been produced. Volovik is not entitled, however, to the breadth of information he desires.

For the above reasons, the majority of Volovik's motion to compel is denied. However, Bayer stated in its memorandum it would be willing to produce the FDA submission for the Centaur system if Volovik would narrow his corresponding discovery request. Given that the Court has effectively narrowed this request by denying it, Bayer is ordered to produce the FDA submission for the Centaur machine.

## III. BAYER'S MOTION TO COMPEL VOLOVIK TO ANSWER INTERROGATORIES AND TO PRODUCE DOCUMENTS

Bayer seeks responses to the following interrogatories: No. 1–exact identification of the patent claims Volovik contends to be infringed, No. 2–the basis for the contentions, and No. 9–the date the subject matter of the patent was invented. The first two requests have been resolved according to post-hearing correspondence between counsel, and this aspect of the motion is therefore denied as moot. The Court will also assume that Interrogatory No. 9 is moot based on Volovik's representation to that effect and from its omission from discussion at the motion hearing.

Bayer also seeks documents withheld by Volovik on the basis of attorney-client privilege. Volovik purchased various assets, including the patent in suit, from Ashirus Technologies, Inc. ("Ashirus") in December 1999. As part of the acquisition, Volovik obtained certain documents relating to the patent. Volovik claims that the documents are protected from discovery by an attorney-client privilege originally held by Ashirus but passing to Volovik with the sale of the assets. According to Volovik, he purchased substantially all of Ashirus's assets, which included all inventory, returns of inventory, warehouse receipts, bills of lading, other documents of title, equipment, personal property, fixtures, accessions, accessories, fittings, parts, repairs, returns, renewals, instruments, chattel paper, rights to payment, money, insurance proceeds, general intangibles, and goodwill. Bayer itself has acknowledged that Volovik

purchased substantially all of Ashirus's assets: "the patent in suit and other assets purportedly conveyed to Volovik constituted substantially all of Ashirus' assets." (Bayer's Mem. Opp. Volovik's Mot. Strike Defense, Hamlin Aff. Ex. A at 12-13) (emphasis in original).

The attorney-client privilege does not pass with the mere purchase of an asset. See Sobol v. E.P. Dutton, Inc., 112 F.R.D. 99, 103 (S.D.N.Y. 1986). However, the attorney-client privilege of a corporation passes to a purchaser of substantially all the assets of the corporation. See Ramada Franchise Sys., Inc. v. Hotel of Gainesville Assoc., 988 F. Supp. 1460, 1464 (N.D. Ga. 1997); Graco Children's Prod., Inc. v. Regalo Int'l LLC, No. CIV. A. 97-6885, 1999 WL 553478, at *4 (E.D. Pa. July 29, 1999); In re Fin. Corp. of Am., 119 B.R. 728, 737 (Bankr. C.D. Cal. 1990); In re Crescent Beach Inn, 37 B.R. 894, 896 (Bankr. D. Me. 1984). In this case, Volovik purchased substantially all of Ashirus's assets. Although Volovik did not acquire the corporation itself, it is notable that Ashirus was involuntarily dissolved only nine days after the sale of its assets to Volovik. Thus, the attorney-client privilege once held by Ashirus transferred to Volovik upon his purchase of substantially all of Ashirus's assets. Bayer's motion to compel documents protected by the privilege is denied.

## IV. BAYER'S MOTION TO COMPEL THIRD-PARTY LINDQUIST & VENNUM TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA

Lindquist & Vennum ("L&V") was counsel to Ashirus before its dissolution. On March 28, 2002, Bayer subpoenaed records from L&V relating to Ashirus. L&V withheld some of the documents on the basis of attorney-client privilege. Although Ashirus was dissolved, L&V determined that the privilege continued to exist, comparing the circumstances to those in which the privilege continues to exist after the death of an individual. Bayer, on the other hand, asserts that a corporation's attorney-client privilege dissolves with the corporation.

The Court need not resolve the issue as framed by the parties because it has determined that the attorney-client privilege once held by Ashirus transferred to Volovik upon his purchase of substantially all of Ashirus's assets. Therefore, Volovik is entitled to invoke the privilege, and he has. Bayer's motion to compel L&V to produce documents is denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Plaintiff Volovik's First Motion to Compel Discovery (Doc. No. 40) is **DENIED**;

(2) Defendant Bayer's Motion to Compel Plaintiff to Answer Interrogatories and Produce Documents (Doc. No. 45) is **DENIED AS MOOT IN PART** and **DENIED IN PART**;

(3) Defendant Bayer's Motion to Compel Third Party Lindquist & Vennum to Produce Documents in Response to Subpoena (Doc. No. 48) is **DENIED**; and

(4) Plaintiff's Second Motion to Compel Discovery (Doc. No. 51) is **DENIED AS MOOT IN PART**, **DENIED IN PART**, and **GRANTED IN PART**.

Dated: June 10, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge

## *Featured Speakers Include:*

<u>District of Minnesota</u>

Judge David S. Doty

Judge Donovan W. Frank

Judge Paul A. Magnuson

Judge Ann D. Montgomery

Judge John R. Tunheim

Chief Magistrate Judge Jonathan Lebedoff

Magistrate Judge Arthur J. Boylan

<u>United States Bankruptcy Court</u>
<u>District of Minnesota</u>

Judge Robert J. Kressel

The Minnesota Chapter of the Federal Bar Association
c/o Kelly & Lerens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

Application Pending for 7.5 CLE Credits including 2 Ethics and 1 Bias Credit

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minneapolis, MN
Permit No. 2657

MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION

In connection with
The Federal Judiciary

# *28th Annual Federal Court Practice Seminar*

June 19, 2002
8:00 am—5:15 pm

Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000

## Morning Session:

| | |
|---|---|
| 7:30-8:00 | Registration |
| 8:00-8:15 | Opening Remarks and Welcome, *Judge Ann D. Montgomery* |
| 8:15-9:00 | Securities Law Issues in the Wake of Enron, *Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)* |
| 9:00-9:45 | Current Issues in Employment Law, *Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)* |
| 9:45-10:00 | Morning Break |
| 10:00-10:45 | Current Initiatives in the U.S. Attorneys' Office, *Tom Heffelfinger (U.S. Attorneys Office)* |
| 10:45-11:45 | Discovery Disputes: Professionalism in the Practice of Law?, *Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,* |
| 11:45-12:45 | Lunch (Room 211) |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| 12:45-1:30 | The Clerk's Office Can Be Your New Best Friend, *Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon* |
| 1:30-2:15 | How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How, *Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)* |
| 2:15-3:15 | Issues in the Wake of 9/11: Racial Profiling -- *Daniel M. Scott (U.S. Federal Public Defenders' Office)*; Response by the Department of Justice -- *Tony Brown (U.S. Attorneys Office)* |
| 3:15:3:30 | Afternoon Break |
| 3:30-4:15 | Update on Technology Tools for Litigating in Federal Court, *Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)* |
| 4:15-5:15 | Ethics in "Real Life" Practice Situations, *Martin A. Cole (Lawyers Professional Responsibility Office)* |

## Seminar Registration

☐ Member $195.00
☐ Non-Member $225.00

Name
Firm/Employer
Address

Phone
E-Mail

Complete registration form and send with check payable to:

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA (612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.
Catherine A. McEnroe, Leonard, Street and Deinard
Celeste M. Shahidi, U.S. Courthouse Minneapolis Building
Susan Nolting, U.S. Department of Justice
Maureen Watz Gornik, Warren E. Burger Federal Building