**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

---

Dmitry Volovik,

Plaintiff,

v.

Bayer Corporation,
an Indiana Corporation,

Defendant.

File No. 01/-CV-1426 JNE/JGL

---

**PLAINTIFF VOLOVIK'S MEMORANDUM IN OPPOSITION TO BAYER'S MOTION FOR A STAY PENDING REEXAMINATION OF U.S. PATENT NO. 5,540,562 BY THE U.S. PATENT & TRADEMARK OFFICE**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ..... 1

**FACTS** ..... 2

**ARGUMENT** ..... 4

- **I. BAYER'S MOTION FOR A STAY PENDING REEXAMINATION SHOULD BE DENIED** ..... 4
  - **A. Bayer Cannot Present All Prior Art To The PTO** ..... 4
  - **B. Bayer Could Have Filed The Request For Reexamination At The Outset Of This Case, But Chose Instead To Litigate In This Court** ..... 5
  - **C. Volovik Will Suffer Substantial Harm From A Stay** ..... 7
  - **D. At The Conclusion Of Reexamination, The PTO Is Likely To Declare The Claims Of The '562 Patent To Be Patentable** ..... 9
- **II. THE CASE LAW WHICH BAYER RELIES ON DOES NOT SUPPORT ITS MOTION TO STAY** ..... 10

**CONCLUSION** ..... 13

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*,
No. 92 Civ. 0482, 1994 WL 121673 (S.D.N.Y. Apr. 6, 1994) ........................................... 7

*Amphenol T&M Antennas, Inc. v. Centurion Int'l, Inc.*,
No. 00 C 4298, 2001 U.S. Dist. LEXIS 13795 (N.D. Ill. Sept. 5, 2001)........................ 6, 7

*Arctic Cat, Inc. v. Injection Research Specialists, Inc.*,
No. 01-543, 2003 U.S. Dist. LEXIS 15095 (D. Minn. Aug. 29, 2003) .......................... 6, 7

*ASCII Corp. v. STD Entm't USA*,
844 F. Supp. 1378 (N.D. Cal. 1994) .............................................................................. 10, 11

*Emerson Elec. v. Davoil, Inc.*,
907 F. Supp. 1303 (E.D. Mo. 1995)..................................................................................... 12

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*,
3 U.S.P.Q. 2d 1889 (N.D. Ill. 1987)..................................................................................... 12

*Enprotect Corp. v. Autotech Corp.*,
15 U.S.P.Q.2d 1319 (N.D. Ill. 1990)...................................................................................... 7

*Gladish v. Tyco Toys, Inc.*,
No. S921666, 1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sept. 15, 1993).......................... 7

*Gonnocci Trust v. Three M Tool & Mach.*,
68 U.S.P.Q. 2d 1755 (E.D. Mich. 2003) ........................................................................ 5, 12

*Grayling Indus. v. GPAC, Inc.*,
19 U.S.P.Q. 2d 1872 (N.D. Ga. 1991)................................................................................. 12

*Implant Innovations, Inc. v. Nobelpharma AB*,
No. 93 C 7489, 1994 U.S. Dist. LEXIS 2033 (N.D. Ill. Feb. 23, 1994)............................ 6

*Kaufman Co., Inc. v. Lanthech*,
807 F.2d 970 (Fed. Cir. 1986) ................................................................................................ 9

*Laitram Corp. v. NEC Corp.*,
952 F.2d 1357 (Fed. Cir. 1991) .............................................................................................. 9

*Loffland Bros. v. Midwestern Energy Corp.*,
225 U.S.P.Q. 886 (W.D. Okla. 1985)................................................................................... 12

*Magnesystems Inc. v. Nikken, Inc.*,
No. 94-1401, 1994 U.S. App. LEXIS 24363 (Fed. Cir. Aug. 30, 1994)........................ 5, 6

*Methode Electronics, Inc. v. Infineon Technologies Corp.*,
No. C 99-21142, 2000 U.S. Dist. LEXIS 20689 (N.D. Cal. 2000)................................. 11

*Minco Inc. v. Combustion Eng'g Inc.*,
95 F.3d 1109 (Fed. Cir. 1996) ......................................................................... 9

*Pacesetter Inc. v. Cardiac Pacemakers, Inc.*,
No. 02-1337, 2004 U.S. Dist. LEXIS 2699 (D. Minn. Feb. 19, 2004)............................ 12

*Perricone v. Unimed Nutritional Servs. Inc.*,
No. 301 CV 512, 2002 WL 31075868 (D. Conn. July 18, 2002) ..................................... 6

*Starlight Assocs. v. Berkey-Colorton, Inc.*,
201 U.S.P.Q. 307 (S.D.N.Y. 1978)......................................................................... 7

*TAP v. Atrix*,
70 U.S.P.Q. 2d 1319 (N.D. Ill. 2004)...................................................................... 12

*Toro Co. v. L.R. Nelson Corp.*,
No. 81-1019, 1984 U.S. Dist. LEXIS 24816 (C.D. Ill. July 25, 1984).............................. 7

*Viskase Corp. v. Am. Nat'l Can Co.*,
261 F.3d 1316 (Fed. Cir. 2001) .................................................................... 5, 7

*Xerox Corp. v. 3Com Corp.*,
No. 97-CV-6182T, 1999 U.S. Dist. LEXIS 9977 (W.D.N.Y. June 25, 1999).................. 12

**Statutes**

35 U.S.C. § 132............................................................................................ 9

35 U.S.C. § 145............................................................................................ 8

35 U.S.C. § 301............................................................................................ 5

MPEP § 2240 ............................................................................................... 9

**Other Authorities**

Note, "*Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination*, 66 Geo. Wash. L. Rev. 172, 183 (Nov. 1997)

## INTRODUCTION

After three years of costly and time-consuming litigation and virtually on the eve of trial, Bayer now moves for a stay of this case, pending the outcome of a reexamination of U.S. Patent No. 5,540,562 ("'562 patent") before the Patent and Trademark Office ("PTO"). Unable to convince this Court to rule that the '562 patent is invalid, Bayer seeks to halt these proceedings so that it can try a new forum.

Bayer has had in its possession for years the art on which it bases its reexamination request. But instead of filing its reexamination request early in the lawsuit, Bayer instead chose to litigate the case before this Court. And as part of that litigation, Bayer stipulated to scheduling orders promising to get the case "ready for trial." But now that the case is, in fact, ready for trial, Bayer has assessed its chances of prevailing and has concluded that the better part of valor is a move to the PTO. Bayer's claim to "conserve judicial resources" is contradicted by its own actions in vigorously contesting this case for the past three years. Bayer's motion is dilatory, and is a tactic aimed solely at delaying trial.

The case law does not support Bayer's belated motion. Courts have uniformly rejected motions to stay in cases where the parties have expended substantial time and resources in trial preparation. It is simply unfair to force a party to wait for as long as two years for a ruling by the PTO that, in the overwhelming majority of cases, will have little or no effect on the litigation.

Significantly, Bayer admits that the PTO cannot review three prior art pumps that it plans to rely on at trial. Thus, a stay in this case will not accomplish one of its major advantages: to have the PTO review all of the prior art before a review by the Court. Nor will a stay under these circumstances result in a substantial savings in trial time or expense. Bayer will mount a validity

attack even if the PTO declares the claims patentable. No court has ever granted a stay under these circumstances.

Finally, Plaintiff Dmitry Volovik ("Volovik") will suffer significant harm if the Court grants a stay of the case. Bayer should not be given a free pass to infringe, while Volovik is forced to wait on the sidelines for years, while memories fade and witnesses disappear.

**FACTS**

On August 7, 2001, Volovik filed this action, accusing Bayer of infringing the '562 patent. On February 18, 2004, two-and-one-half years later, Bayer filed a request for reexamination of the '562 patent with the PTO. The PTO granted Bayer's request for reexamination on April 8, 2004. (Exhibit A to Bayer Stay Br. [1]). Bayer now moves for a stay of proceedings in this Court, arguing that the PTO's reexamination of the '562 patent could "conserve judicial resources" and prevent a trial "that may be extinguished by the reexamination proceeding." (Bayer Stay Br. at 7.)

Bayer's effort to "conserve judicial resources" comes too late. The parties have already spent considerable time, effort and expense on this case over the past three years. Below is a partial list illustrating what has occurred since the inception of the lawsuit:

- The parties served and answered a total of **46** interrogatories.
- Bayer served **86** requests for documents on Volovik, while Volovik served **96** requests on Bayer.
- The parties served and answered a total of **34** requests to admit.
- The parties took a total of **30** depositions, including **7** expert depositions.

---

[1] References herein to "Bayer Stay Br." refer to Bayer's Memorandum in Support of its Motion for a Stay Pending Reexamination of U.S. Patent No. 5,540,562 by the U.S. Patent & Trademark Office.

- The parties submitted **11** expert reports.

- Bayer produced **163,377** pages of documents, while Volovik produced **25,298** pages. Third parties produced another **9,172** pages.

- **Four Summary Judgment Motions** were filed with the Court and ruled on, including: Bayer's Motion for Summary Judgment on Invalidity; Bayer's Motion for Summary Judgment of Patent Invalidity or, in the alternative, of Non-infringement; Bayer's Motion for Summary Judgment Denying Damages Based on the Entire Market Value Rule; and, Volovik's Motion for Summary Judgment on Patent Ownership and on Bayer's Affirmative Defense of Lack of Standing.

- **Two Motions in Limine** were filed with the Court and ruled on, including: Bayer's Motion in Limine to Preclude Volovik from Submitting Evidence Relating to Royalty Damages for Alleged Future Injury; and, Bayer's Motion in Limine to Preclude Volovik from Submitting Evidence as to Damages for Any Infringement Prior to December 22, 1999.

- There were **two oral arguments** on the summary judgment motions and motions in limine before the U.S. District Court Judge, and numerous appearances before the Magistrate Judge on various discovery matters, including Bayer's motion to extend the discovery deadline so that it could obtain additional discovery on the Beckman CX3 pump. (Ex. 1).[2]

- There have been **29 Orders**, to date, issued by the Court in this lawsuit.

(Affidavit of Marta M. Chou).

In addition, Bayer agreed to **six scheduling orders** in this case, including the initial Order of March 11, 2002 that the case be "ready for trial" as of October 1, 2003. (Ex. 2). Now that the case is ready for trial, Bayer wants to delay.

Bayer has been in possession of the prior art cited in the reexamination request for several years,[3] but chose to litigate in this Court, rather than to initiate an ex parte reexamination.

---

[2] All exhibits referenced herein are attached to the Affidavit of Thomas L. Hamlin in Support of Plaintiff Volovik's Memorandum of Law in Opposition to Bayer's Motion for a Stay Pending Reexamination of U.S. Patent No. 5,540,562 by the U.S. Patent & Trademark Office.

[3] Bayer did not rely on the Furness patent in its summary judgment motions, but the patent is part of the reexamination request. (Ex. A to Bayer Stay Br.). The Furness patent is even less significant than the art that Bayer has relied on to date. The Furness patent lacks many of the

Bayer produced nearly all of the art in discovery more than two years ago (Ex. 3), and then later submitted it in support of Bayer's two unsuccessful summary judgment motions to invalidate the '562 patent. Thus, the Court has already examined in detail nearly all of the prior art Bayer relies on in its request for reexamination. Only after losing the second summary judgment motion on validity did Bayer file a request for reexamination.

What is most remarkable is that Bayer moves for a stay, even though it admits that three pieces of prior art—the Beckman CX3 pump, the Abbott Axsym pump and the Abbott Spectrum pump—cannot be submitted to the PTO as part of the reexamination. (Bayer Stay Br. 4). Thus, even if the PTO determines claim 1 of the '562 patent to be patentable, Bayer will nevertheless attack the validity of the patent at trial by relying on these pumps.

The case has been "ready for trial" since at least January 7, 2004 when the Court ruled on various dispositive motions. Plaintiff emphasizes that it is prepared to try this case, and estimates the entire trial will take no more than eight trial days. Plaintiff also emphasizes that if this case goes to trial this year, a jury will determine the validity of the '562 patent long before the PTO issues a final ruling in the reexamination proceeding.

## ARGUMENT

### I. BAYER'S MOTION FOR A STAY PENDING REEXAMINATION SHOULD BE DENIED

#### A. Bayer Cannot Present All Prior Art To The PTO

No court has ever granted a stay of the proceedings where all of the prior art in the litigation cannot be presented to the PTO for reexamination. Here, Bayer has repeatedly claimed that the Beckman CX3 pump, the Abbott Axsym pump, and the Abbott Spectrum pump render

---

elements of the '562 patent, including two ports. The Furness patent was cited against the foreign counterpart of the '562 patent, but the foreign patent issued over it. Bayer produced the Furness patent to Volovik during discovery on February 15, 2002. (Ex. 3). Apparently, Bayer did not consider the patent significant enough to include in its summary judgment motions.

the '562 patent invalid. Yet, by statute, reexamination is restricted to "patents or printed publications," thus precluding any review of these pumps by the PTO. 35 U.S.C. § 301. The PTO's inability to review the pumps is reason enough to deny Bayer's motion for a stay. One of the advantages of a stay is that "**[a]ll prior art** presented to the Court will have been first considered by the PTO, with its particular expertise." *Gonnocci Trust v. Three M Tool & Mach.*, 68 U.S.P.Q. 2d 1755, 1757 (E.D. Mich. 2003) (emphasis added). In this case, there is no such advantage. If the PTO certifies the patentability of claim 1 of the '562 patent, Bayer will still attack the validity of the '562 patent at trial based on art that was never submitted to the PTO. Thus, granting a stay will not substantially reduce costs or trial time.

**B. Bayer Could Have Filed The Request For Reexamination At The Outset Of This Case, But Chose Instead To Litigate In This Court**

Bayer's argument that a stay is warranted in these circumstances has no legal support. Courts are "not required to stay judicial resolution in view of the reexaminations." *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). Courts have denied motions to stay when a party attempts to use the reexamination process to avoid adverse rulings by the court. For example, in *Magnesystems Inc. v. Nikken, Inc.*, No. 94-1401, 1994 U.S. App. LEXIS 24363 at 8-9 (Fed. Cir. Aug. 30, 1994) (unpublished) (Ex. 4), the Federal Circuit denied the defendant's motion for a stay pending reexamination, pointing out that "Nikken requested reexamination of Magnesystems' patent only after the district court's adverse [summary judgment] rulings on infringement and validity" and noted that the court had "already addressed a significant portion of the arguments contained in Nikken's request for reexamination." *Id.* at 8-9.

Unable to convince this Court to declare the '562 patent invalid, Bayer now asks for a stay of this case while it seeks relief in a different forum. Only after Bayer lost two motions for summary judgment on validity did it finally file the reexamination request with the PTO, even

though it was in possession of the prior art supporting the request for years. In the course of denying both motions, this Court, like the court in *Magnesystems*, considered nearly all of the art Bayer relies on for its reexamination request.

Motions for stay are denied when they are being used – as Bayer does here – as a dilatory tactic; courts recognize that once substantial time and resources have been invested in federal court litigation, it is improper to stay pending reexamination. In *Arctic Cat, Inc. v. Injection Research Specialists, Inc.*, No. 01-543, 2003 U.S. Dist. LEXIS 15095 (D. Minn. Aug. 29, 2003) (Ex. 5), the court denied a stay filed two years after the commencement of a lawsuit, and after a significant exchange of discovery. *Id.* at 5-6.

In *Amphenol T&M Antennas, Inc. v. Centurion Int'l, Inc.*, No. 00 C 4298, 2001 U.S. Dist. LEXIS 13795 (N.D. Ill. Sept. 5, 2001) (Ex. 6), the district court denied defendant's motion for a stay pending reexamination noting that "[a]lthough courts have not agreed on all factors guiding a decision as to whether to grant a stay, it appears that most courts observe at least one rule: 'Stays pending re-examination should not be granted when substantial time and resources have already been invested in federal court litigation.'" *Id.* at 4 (quoting *Implant Innovations, Inc. v. Nobelpharma AB*, No. 93 C 7489, 1994 U.S. Dist. LEXIS 2033, at *9 (N.D. Ill. Feb. 23, 1994) (other citations omitted). The court went on to deny the motion for a stay, because substantial time and resources had already been invested in the case (thirteen months with extensive discovery), finding that it was "unclear whether the reexamination process will have any effect on the present lawsuit" and that plaintiff "could be prejudiced by a long stay." *Id.* at *7.[4]

[4] *Perricone v. Unimed Nutritional Servs. Inc.*, No. 301 CV 512, 2002 WL 31075868, at *3 (D. Conn. July 18, 2002) (noting that a stay may be granted when "a case is in the **early stages of litigation**." (emphasis added)).

Here, the expenditure of time, judicial resources and expense incurred in litigating this action dwarf that found substantial enough to deny a stay by the courts in *Arctic Cat* and *Amphenol*.[5] Discovery is complete. Thirty depositions have been taken, including seven expert depositions. More than 100,000 pages of documents have been produced. Dispositive motions and motions in limine have been briefed, argued and decided. The case is trial ready. Now, on the eve of trial, Bayer asks this Court to halt the proceedings in the false hope that the PTO may render a decision more favorable to Bayer. Bayer makes this motion, despite stipulating to six scheduling orders calling for a trial on the merits. This Court and the parties have expended three years of time and effort; the parties have spent millions of dollars; and the judicial system has spent precious resources to get this case to trial. Bayer's motion is precisely the kind of dilatory tactic that courts have uniformly rejected. Bayer must be held to its commitment in the pretrial orders to try this case without significant interruption or delay.

### C. Volovik Will Suffer Substantial Harm From A Stay

Despite Bayer's claim to the contrary, the harm to Volovik resulting from a stay is overwhelming. Volovik has spent a considerable portion of the life of the '562 patent

---

[5] Additional support for the denial of a stay pending reexamination based, in part, on the substantial time and expense already incurred in the litigation, include: *Viskase*, 261 F.3d at 1327-28 (denying motion for a stay pending reexamination); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, No. 92 Civ. 0482, 1994 WL 121673, at *2 (S.D.N.Y. Apr. 6, 1994) (upholding a prior denial of a motion for a stay because "considerable time and effort had been extended in the discovery stage of the action, which was rapidly reaching its conclusion."); *Gladish v. Tyco Toys, Inc.*, No. S921666, 1993 U.S. Dist. LEXIS 20211, at *2-3 (E.D. Cal. Sept. 15, 1993) (denying stay because of the extensive discovery already performed and upcoming depositions); *Enprotect Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 1990) (stating that the "[m]ost compelling" reason for the denial of a stay "is the fact that discovery here is almost completed and the case is set for trial."); *Toro Co. v. L.R. Nelson Corp.*, No. 81-1019, 1984 U.S. Dist. LEXIS 24816, at *5-6 (C.D. Ill. July 25, 1984) (denying stay because litigation had been going on for almost three and a half years and the court determined that a stay would "accomplish little," other than "the delay of disposition."); *Starlight Assocs. v. Berkey-Colorton, Inc.*, 201 U.S.P.Q. 307, 307-08 (S.D.N.Y. 1978) (denying motion for stay where the moving party knew of the prior art for about one year before filing its reexamination request).

discovering the infringement Bayer tried to conceal from him, and attempting to enforce his patent rights against a multinational pharmaceutical giant and the dominant player in the immunoassay system market. Bayer now seeks relief from this Court that would require Volovik to stand on the sideline for another large portion of the remaining life of the patent while Bayer receives a free pass to continue its infringement. Indeed, recent statistics reveal that reexaminations on average take 21.4 months to reach resolution in the PTO. (Ex. 7). In addition to this, subsequent administrative appeals and review in the Federal Courts under 35 U.S.C. § 145, if necessary, would take additional years to complete.

If this case is delayed for more than two years by Bayer's stay, Volovik's case will be damaged. Memories about events that took place more than ten years ago will fade. Witnesses may die or become unavailable for other reasons. Expert opinions, fresh now, will become less so, as witnesses are forced to put this case on hold for years.

Moreover, it is unclear that a reexamination will have any effect on this case at all. Statistics bear this out. *See* Note, *Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination*, 66 Geo. Wash. L. Rev. 172, 183 (Nov. 1997) (analyzing reexamination statistics showing that the probability that reexamination will eliminate all triable issues from litigation "is a meager twelve percent" or "less than a one in eight chance."). In reexaminations requested by third parties—the case here—all claims are confirmed 30% of the time. (Ex. 7). In addition, in 58% of these reexaminations the claims come through reexamination with changes; thus in 88% of cases after reexamination the patentholder continues to possess an enforceable patent. *Id.*

Bayer has misstated the effect of any reexamined claims. Claims amended during a reexamination proceeding do not lose their retroactive effect to the original issue date if the

amendments do not make a substantive change in the scope of the claims. *Minco Inc. v. Combustion Eng'g Inc.*, 95 F.3d 1109, 1115 (Fed. Cir. 1996); *Kaufman Co., Inc. v. Lanthech*, 807 F.2d 970, 976-77 (Fed. Cir. 1986). In this respect, claim changes during a reexamination proceeding based on a prior art rejection are not necessarily substantive changes that preclude liability for infringement that occurs before a reexamination certificate issues. *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362-63 (Fed. Cir. 1991).

Thus, Volovik's claims will likely survive the reexamination process intact or not changed substantially. But even if Volovik is required to modify the claims substantially, he can still pursue an injunction and future damages against Bayer, since the patent does not expire for several years.

What is also clear is that even if the PTO issues a certificate of patentability on the '562 patent, such an action will do nothing to deter Bayer from attacking the validity of the patent by arguing that the Beckman CX3 pump, the Abbott Axsym pump, and the Abbott Spectrum pump are pertinent prior art. In sum, a reexamination is unlikely to have any effect on the '562 patent or to save much trial time or expense.

**D. At The Conclusion Of Reexamination, The PTO Is Likely To Declare The Claims Of The '562 Patent To Be Patentable**

An order granting reexamination is merely a statement that a substantial question exists as to the patentability of certain claims. *See* MPEP § 2240. Here, the PTO's grant cited art that is quite familiar to this Court. Volovik will easily distinguish this art, once the PTO issues an office action.[6] This is because:

---

6 In an office action, the PTO gives detailed reasons for its decision. 35 U.S.C. § 132. In most cases, following a grant of the request of reexamination, the PTO will reject the claims of the patent, giving specific reasons for the rejection. At that point, the patentholder has the burden of presenting arguments in support of patentability. This will be Volovik's first

- The Furness patent has only one port, and is a flow meter that cannot aspirate and dispense precise amounts of fluid.
- The Yang patent is a flow meter with a positioning means that is not equivalent to the positioning means in the '562 patent.
- The Kudo patent is a flow meter which does not disclose a seal or any means for carrying a seal.
- The Dourdeville patent is not prior art, and is a flow meter incapable of precise measurements.
- The Clark '471 and '691 patents are not prior art; moreover, the means for carrying the seal is a spring and is not equivalent to the '562 patent.

In short, the chances of the PTO invalidating the '562 patent based on this art are low indeed.

## II. THE CASE LAW WHICH BAYER RELIES ON DOES NOT SUPPORT ITS MOTION TO STAY

Bayer cites numerous cases, claiming that such cases "grant[] motion[s] to stay pending reexamination." Bayer St. Br. 4-5. But there is no analysis, or explanation of these cases, or any inquiry into how much—if any—discovery was undertaken. Upon a close review, it is clear that these cases do not support Bayer's motion to stay.

The cases that Bayer relies on could hardly be less similar to this case. The present case, as explained throughout, is three years old; the parties have engaged in voluminous discovery over a substantial period of time and at considerable expense; the Court has devoted precious resources in ruling on four summary judgment motions and two motions in limine. Yet, in support of its motion, Bayer cites *ASCII Corp. v. STD Entm't USA*, 844 F. Supp. 1378 (N.D. Cal. 1994), a case in which the court acknowledged as factors in deciding whether a stay is appropriate "the stage in the litigation, whether discovery is or will be almost completed, and

---

opportunity to review and rebut the PTO's detailed reasons for its action. Bayer has no further right to comment beyond the initial request.

whether the matter has been marked for trial." *Id.* at 1380. In *ASCII*, the court found a litigation stay was warranted because the lawsuit had hardly commenced and there was a chance that the PTO proceedings could uncover prior art that would obviate the lawsuit. "Here," the court stated, "the parties are in the **initial stages of the lawsuit and have undertaken little or no discovery**. Moreover, the case has not been set for trial, nor have the parties agreed to go forward with the lawsuit." *Id.* at 1381 (emphasis added).

The ruling in *Methode Electronics, Inc. v. Infineon Technologies Corp.*, No. C 99-21142, 2000 U.S. Dist. LEXIS 20689 (N.D. Cal. 2000) (Ex. 8), is unfavorable to defendants on multiple levels. There, the court acknowledged that factors to be included in the decision of whether to stay litigation included "the stage of the litigation, whether discovery is or will be almost completed, and whether the matter has been marked for trial." *Id.* at *5-6. Again, the court decided that a stay was warranted based on the **early stage of the litigation**. *Id.* at 6. ("First, this case is in its incipient stages. Methode's complaint was filed less than eight months ago, no depositions have been taken, and no trial date has been set."). The court also acknowledged the principle that "substantial expense and time invested in the litigation would militate against a further delay of disposition." *Id.* at *7 (internal citations omitted). Perhaps most significant to this litigation, in granting the stay the court found significant that "[d]efendants did not unduly delay in bringing the present motion, and that there is no reason to believe that Defendants are utilizing any dilatory tactics by requesting the stay." *Id.* In contrast, Bayer sought a stay for a reexamination of art it has long had in its possession, and it did so only after the Court had issued adverse rulings on Bayer's motions for summary judgment to invalidate the '562 patent, and only after the case was trial ready.

In *Pacesetter Inc. v. Cardiac Pacemakers, Inc.*, No. 02-1337, 2004 U.S. Dist. LEXIS 2699 (D. Minn. Feb. 19, 2004) (Ex. 9), the court granted the defendants' motion to stay where the plaintiff filed an infringement action based on four patents, and then filed a request for reexamination on two of them. Plaintiff argued that the case should proceed on the patents that were not being reexamined. In support of its ruling, the court stated that "[t]he approach suggested by the Plaintiff almost assures duplicitous and unnecessary discovery at every juncture." *Id.* at 5. Obviously, the *Pacesetter* ruling has no application to the instant case.

Occasionally, a court may grant a stay even though the case is well underway, where a party finds a key piece of prior art through discovery and then files a request for reexamination without delay. In *Grayling Indus. v. GPAC Inc.*, 19 U.S.P.Q. 2d 1872 (N.D. Ga. 1991), the court granted plaintiff's motion to stay after nearly two years of litigation, where the plaintiff discovered the prior art that formed the basis for reexamination during deposition discovery, and then filed the request for reexamination. *Id.* at 1874; *see Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q. 2d 1889 (N.D. Ill. 1987) (granting stay where defendant filed reexamination request immediately after discovery depositions disclosed two patents as prior art).[7]

[7] As indicated, many of the cases Bayer relies on can be easily distinguished due to the early stage of the litigation. *TAP v. Atrix*, 70 U.S.P.Q. 2d 1319 (N.D. Ill. 2004) (granting stay where action had not progressed beyond initial pleading stage and two requests for reexamination were granted before suit was filed); *Gonnocci*, 68 U.S.P.Q. 2d 1755 (granting stay where action was pending less than a year and far more resources had yet to be spent); *Emerson Elec. v. Davoil, Inc.*, 907 F. Supp. 1303 (E.D. Mo. 1995) (granting stay where both parties had moved for stay and reexamination would free the court from the need to consider prior art). In other cases, the parties had conducted some discovery, but were simply not ready for trial, unlike the instant case. *Xerox Corp. v. 3Com Corp.*, No. 97-CV-6182T, 1999 U.S. Dist. LEXIS 9977 (W.D.N.Y. June 25, 1999) (granting motion to stay where parties moved for a Markman hearing, a summary judgment motion was pending and PTO office action rejected all claims); *Loffland Bros. v. Midwestern Energy Corp.*, 225 U.S.P.Q. 886 (W.D. Okla. 1985) (granting motion to stay where reexamination request was filed with PTO seven months after filing of lawsuit; final action on reexam expected in January 1985; plaintiff could not be ready for trial until May 1985.)

Here, Bayer has been in possession of the prior art that forms the basis for reexamination for years, yet it chose to litigate in this forum, rather than file a request for reexamination. Bayer's motion is dilatory, and is intended to delay the impending trial of this case without justification in law or in fact.

**CONCLUSION**

This case is trial ready. Volovik is prepared to proceed. A stay will not result in a substantial savings in time or expense, but will significantly harm Volovik. Accordingly, Volovik respectfully requests the Court to deny Bayer's motion to stay.

Dated July 30, 2004.

**ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.**

By: s/ Thomas L. Hamlin
Thomas L. Hamlin (#40216)
Marta M. Chou (#0332112)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

**ATTORNEYS FOR**
**PLAINTIFF DMITRY VOLOVIK**