LEXSEE 2001 US DIST LEXIS 13795

**AMPHENOL T&M ANTENNAS, INC., Plaintiff, v. CENTURION INTERNATIONAL, INC., Defendant.**

**No. 00 C 4298**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2001 U.S. Dist. LEXIS 13795**

**September 5, 2001, Decided**

**DISPOSITION:** [*1] Centurion's motion for stay denied and ATM's motion for sanctions denied without prejudice. ATM's motion for judgment regarding inequitable conduct claim granted without prejudice.

**LexisNexis(R) Headnotes**

**COUNSEL:** For AMPHENOL T&M ANTENNAS, INC., plaintiff: Roger Douglas Greer, Steven P. Fallon, Greer, Burns & Crain, Ltd., Chicago, IL.

For CENTURION INTL INC, defendant: Alan S. Dalinka, Richard Allan Janney, Piper, Marbury, Rudnick & Wolfe, Chicago, IL.

For CENTURION INTL INC, defendant: Shane M Niebergall, Dennis L Thomte, Zarley, McKee, Thomte, Voorhees & Sease, Omaha, NE.

For CENTURION INTL INC, counter-claimant: Richard Allan Janney, Piper, Marbury, Rudnick & Wolfe, Chicago, IL.

For AMPHENOL T&M ANTENNAS, INC., counter-defendant: Roger Douglas Greer, Steven P. Fallon, Greer, Burns & Crain, Ltd., Chicago, IL.

For CENTURION INTL INC, counter-claimant: Shane M Niebergall, Dennis L Thomte, Zarley, McKee, Thomte, Voorhees & Sease, Omaha, NE.

**JUDGES:** Joan B. Gottschall, United States District Judge.

**OPINIONBY:** Joan B. Gottschall

**OPINION:**

**ORDER**

Amphenol T&M Antennas, Inc. ("ATM") has filed suit against Centurion International, Inc. ("Centurion"), alleging infringement of its patent, U.S. Patent [*2] No. 6,034,639 ( '639 patent) entitled "Retractable Antenna for Portable Communicator." (Pl. Compl. P 2.) Specifically, ATM alleges that an antenna manufactured by Centurion for a Motorola wireless phone infringes the '639 patent. A number of motions in various stages of briefing are pending before the court. This opinion will address three that are fully briefed: Centurion's motion for a stay pending reexamination of the '639 patent by the Patent and Trademark Office ("PTO"); ATM's motion for judgment on the pleadings regarding Centurion's counterclaim of inequitable conduct; and ATM's motion for sanctions because of the filing of the inequitable conduct counterclaim. For the reasons set forth below, Centurion's motion for a stay and ATM's motion for sanctions are denied. ATM's motion for judgment regarding the inequitable conduct claim is granted without prejudice.

**I. Centurion's Motion for a Stay**

On July 11, 2001, the Patent and Trademark Office ("PTO") granted Centurion's request for reexamination of the '639 patent, stating that there is a "substantial new question of patentability" regarding the '639 patent. (Order Granting Request for Reexamination by PTO at 2.) Centurion [*3] moves for a stay of proceedings in this court, arguing that the PTO's reexamination of the '639 patent could substantially affect Centurion's

exposure to liability and damages in the present lawsuit. n1 ATM vigorously opposes the motion, arguing, among other things, that a stay would be inappropriate given how far the litigation has progressed to this point.

n1 Centurion's motion for a stay was filed on May 31, 2001, two months before the PTO granted Centurion's request for reexamination of the '639 patent.

A district court has the inherent power to manage its docket, including the power to stay proceedings pending the reexamination of a patent claim by the PTO. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *see also Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) ("'A motion to stay an action pending resolution of a related matter in the [PTO] is directed to the sound discretion of the court.'") (citations omitted). Although courts [*4] have not agreed on all the factors guiding a decision as to whether to grant a stay, it appears that most courts observe at least one rule: "Stays pending re-examination should not be granted when substantial time and resources have already been invested in federal court litigation." *Implant Innovations, Inc. v. Nobelpharma AB*, 1994 U.S. Dist. LEXIS 2033, *9, 1994 WL 68498, *3 (N.D.Ill. Feb. 25, 1994); *Enprotech Corp. v. Autotech Corp.*, 1990 U.S. Dist. LEXIS 2926, 15 U.S.P.Q.2D (BNA) 1319, 1320 (N.D.Ill. 1990) (stating that the "most compelling" reason for the denial of a stay "is the fact that discovery here is almost completed and the case is set for trial."); *Xerox*, 69 F. Supp. 2d at 406 (denying motion for stay because, among other things, "substantial time and expense have [already] been invested in the litigation by the parties and the Court."); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 1994 U.S. Dist. LEXIS 4130, *6, 1994 WL 121673, *2 (S.D.N.Y. Apr. 6, 1994) (upholding a prior denial of a stay motion because "considerable time and effort had been extended in the discovery stage of the action, which was rapidly reaching its conclusion.")

The present litigation is more [*5] than 13 months old. Discovery is well underway; Centurion has filed a motion for partial summary judgment of invalidity as to many of ATM's patent claims; and ATM has filed a motion for a preliminary injunction. Expert reports are scheduled to be exchanged by the end of September, and a pretrial order is due at the beginning of December. A trial date has been set as well.

Centurion makes essentially two arguments in support of a stay. One is that the "amount of discovery [to date] cannot be an issue in deciding whether or not to stay the matter" (Centurion Reply at 5) because re-examination of the '639 patent will have a "dramatic effect on both the liability and damages issues before the court." (*Id.* at 1.) As support for its argument, Centurion cites statistics indicating that overall, "74% of patent[]" claims that the PTO examines are either invalidated or modified. (*Id.* at 2.) Therefore, Centurion argues, the case would have to be relitigated if the court were to move forward without first waiting for the PTO to reexamine the patent claims. Centurion's second argument is that ATM will "suffer no harm" from a grant of a stay. (*Id.* at 3.) Specifically, Centurion [*6] argues that ATM's lawsuit and its preliminary injunction motion rest on a number of unknown variables that would have to go ATM's way in order for it to prevail. Because of the unlikelihood of these events coming to pass, Centurion suggests, ATM would effectively not suffer any harm from being denied the chance to litigate during the pendency of the reexamination.

Centurion's arguments are unpersuasive. Though an exhibit to ATM's response brief indicates that 71% of patents that the PTO examines are modified in some way (U.S. PTO Ex Parte Reexamination Filing Data - March 31, 2001 ("Filing Data"), Exh. B to ATM Resp., at 2), it is unclear whether the PTO's reexamination of the '639 patent would affect litigation in the present suit. On the one hand, the PTO may not modify the '639 patent, in which case the parties would be in the same position at the end of the reexamination process as they are now. On the other hand, some of the '639 patent's claims could be altered in a way favorable to Centurion, but this result might have only a minimal effect on the pending litigation. For example, the court could eventually grant Centurion's motion for partial summary judgment as to invalidity [*7] of precisely the same claims that the PTO altered in Centurion's favor. In that case, the PTO's actions would be immaterial in their impact on this litigation.

What is clear is that there would be a long delay between the time that a stay is granted and the time that the PTO finishes its reexamination proceeding of the '639 patent. According to the PTO, the average pendency of a reexamination is approximately 20 months. (Filing Data at 2.) Such a long delay is important, in part, because ATM has filed a motion for a preliminary injunction. While it is unclear whether ATM will ultimately prevail in this motion, it is certain that if ATM has a good case and a long stay is granted, ATM will suffer great harm as Centurion infringes ATM's patent throughout the stay period and potentially reaps profits rightfully belonging to ATM.

Substantial time and resources have already been invested in the current litigation, and it is unclear whether the reexamination process will have any effect on the present lawsuit. Moreover, ATM could be prejudiced by a long stay. Centurion's motion for a stay is denied.

**II. ATM's Motion for Judgment on Centurion's Counterclaim of Inequitable Conduct** [*8]

In both its Answer and in its First Amended Answer to ATM's complaint, Centurion filed a counterclaim of "inequitable conduct," alleging that ATM misled the PTO in prosecuting its '639 patent because of alleged misrepresentations regarding prior art, specifically U.S. Patent Nos. 5,079,558 ( '558 patent) and 5,389,938 ( '938 patent). ATM filed a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings regarding this counterclaim, asserting, under Rule 12(h)(2), that Centurion has failed to state a claim upon which relief can be granted. n2 Though ATM filed its Rule 12(c) motion before Centurion filed its First Amended Answer, the court will apply ATM's motion to the First Amended Answer because the inequitable conduct claim which is the subject of the motion is the same in both the Answer and the First Amended Answer.

> n2 Rule 12(h)(2) provides that a "defense of failure to state a claim upon which relief can be granted . . . may be made . . . by motion for judgment on the pleadings." Fed.R.Civ.Pro. 12(h)(2).

[*9]

A Rule 12(c) motion is judged by the standards employed in deciding a motion brought under Rule 12(b). *GATX Leasing Corp. v. Nat'l. Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). "'Accordingly, [a Rule 12(c)] motion should not be granted unless it appears beyond doubt that [the nonmovant] cannot prove any facts that would support his claim for relief.'" *Id.* (citations omitted). In reviewing the motion, the court must view the facts of the nonmovant's claim "in the light most favorable to the nonmoving party." *Id.* The court is not permitted to consider materials outside the pleadings in deciding whether to grant a motion under Rule 12(c). Fed.R.Civ.Pro. 12(c).

In order to state a claim of inequitable conduct, a defendant needs to allege that the plaintiff committed "affirmative misrepresentations of material fact," submitted "false material information," or failed to "disclose known material information during the prosecution of a patent . . . with the intent to deceive the PTO." *Life Technologies, Inc. v. Clontech Laboratories, Inc.*, 224 F.3d 1320, 1324 (Fed. Cir. 2000). Allegations of inequitable conduct are governed by the [*10] pleading requirements of Rule 9(b), which requires that averments of fraud be pled with particularity. *Videojet Systems Int'l., Inc. v. Inkjet, Inc.*, 1997 U.S. Dist. LEXIS 3378, *10, 1997 WL 124259, *4 (N.D.Ill. Mar. 17, 1997); *Energy Absorption Systems v. Roadway Safety Service, Inc.*, 1993 U.S. Dist. LEXIS 9071, 28 U.S.P.Q.2D (BNA) 1079, 1080 (N.D.Ill. 1993); *Sun-Flex Co. v. Softview Computer Products*, 750 F. Supp. 962, 18 U.S.P.Q.2D (BNA) 1171, 1172 (N.D.Ill. 1990). Therefore, in order to state a claim of inequitable conduct, a defendant must state the "time, place, and content of any alleged misrepresentations that plaintiff made to the PTO, and the requisite intent." *Videojet*, 1997 U.S. Dist. LEXIS 3378, 1997 WL 124259, at *5.

Labeled as a "Fourth Affirmative Defense," Centurion's counterclaim of inequitable conduct states,

> [the '639 patent] is unenforceable due to inequitable conduct, specifically, *inter alia*, during prosecution of the '639 patent in the [PTO] [sic] ATM misrepresented the disclosures of at least [the '558 patent] and [the '938 patent]. These misrepresentations were material because (a) the references render the '639 patent invalid under 35 U.S.C. § § 102 [*11] and 103; and (b) if properly represented, the Examiner would not have allowed the '639 patent to issue. The misrepresentations were intentional and were for the purpose of obtaining issuance of the '639 patent.

(Centurion's First Am. Ans. at 3-4).

Pointing out that Rule 9(b) governs pleadings of inequitable conduct, ATM argues that the only detailed allegation provided in Centurion's counterclaim is that ATM committed wrongdoing in failing to "properly represent" prior art, specifically the '558 and '938 patents. (ATM's Reply at 2) (quoting Centurion's First Am. Ans. at 3-4.) Interpreting this language to mean that Centurion accuses ATM of failing to explain or "stress the relevance" of prior art, ATM argues that such a failure on the part of ATM cannot, as a matter of Federal Circuit law, constitute inequitable conduct. (ATM's Reply at 2.) Contending that ATM has misunderstood its counterclaim, Centurion responds that the language of the counterclaim does not complain of ATM's failure to disclose information. Rather, Centurion argues, the language indicating ATM's failure to "properly

represent" prior art actually means that ATM committed "intentional material misrepresentations" [*12] to the PTO regarding the '558 and '938 patents. (Centurion's Resp. at 2.)

ATM's Rule 12(c) motion is granted without prejudice. The court cannot decide what Centurion's inequitable conduct claim means because it fails to comply with the requirements of Rule 9(b). Under Rule 9(b), Centurion's counterclaim must indicate the "time, place, and content of any alleged misrepresentations" that ATM made to the PTO. *Videojet*, 1997 U.S. Dist. LEXIS 3110, 1997 WL 124259, at *5. The counterclaim does none of these things with any degree of specificity. Consequently, the court is even unable to determine which of the parties' competing interpretations of the counterclaim is correct. Centurion has twenty days to amend its answer in order to replead its counterclaim of inequitable conduct in conformity with Rule 9(b). If at the end of this time period, Centurion has failed to replead its counterclaim of inequitable conduct, this claim will be dismissed with prejudice.

**III. ATM's Motion for Sanctions**

ATM has moved for sanctions under Rule 11(c)(1)(A), asserting that Centurion's counterclaim of inequitable conduct "is not reasonably founded in the law of inequitable conduct or upon any facts known [*13] to Centurion at the time of the pleading." (ATM Rule 11(c)(1)(A) Mtn. for Sanctions Due to Centurion's Inequitable Conduct Counterclaim at 1.) Centurion vigorously opposes this motion, arguing that ATM misrepresented prior art and violated a "duty of candor" to the PTO. (Def. Resp. at 4.) In reply, ATM disputes Centurion's factual allegations.

The Advisory Committee Notes to Rule 11 state that "in the case of pleadings, the sanctions issue under Rule 11 normally will be determined at the end of the litigation. . . ." Advisory Committee Notes to Rule 11. In *Kaplan v. Zenner*, 956 F.2d 149, 152 (7th Cir. 1992), the Seventh Circuit explained that "'the situation contemplated by the committee notes is one in which the basis for factual allegations in pleadings cannot be determined until such time as the party claiming those facts has had an adequate opportunity to develop his proof.'" (citations omitted).

ATM's motion for sanctions is denied without prejudice. As explained above, Centurion's counterclaim of inequitable conduct must be repleaded to conform with the strictures of Rule 9(b) if the claim is to remain a part of Centurion's answer. If Centurion chooses not to [*14] include a modified version of the counterclaim in its answer, one of ATM's prayers for relief (the striking of the counterclaim) will effectively have been satisfied. It is unclear whether ATM would subsequently renew its motion for sanctions. If Centurion chooses to replead its counterclaim properly, the counterclaim would remain a part of the suit, and discovery would proceed with regard to the counterclaim. Once discovery were completed, and if there were evidence indicating that Centurion committed wrongdoing in pleading the claim, ATM could move again for sanctions.

In light of the fact that discovery has not ended, that point is not now. ATM's motion for sanctions attacks the factual basis for Centurion's counterclaim. Centurion claims that it has not had a full opportunity to develop the basis of this counterclaim. (ATM Interrogatory No. 9, Exh. E to Pl. Mtn. for Sanctions, at 6.) *Kaplan* and the Advisory Committee's notes to Rule 11 suggest that courts should not decide whether to grant sanctions for pleading violations until the party who has authored the pleading has had a full chance to develop its proof. In light of *Kaplan* and the Advisory Committee's notes, the [*15] court will not decide a motion for sanctions regarding Centurion's counterclaim until all the evidence is in. *See also* Wright & Miller, Federal Practice and Procedure: Civil 2d § 1335, at 88 ("Many courts agree . . . that Rule 11 is violated 'only when it is patently clear that a claim has absolutely no chance of success' and that all doubts should be resolved in favor of the signer.") (citations omitted). ATM's motion for sanctions is denied.

**Conclusion**

For the foregoing reasons, Centurion's motion for a stay is denied, and ATM's motion for sanctions is denied without prejudice. ATM's motion for judgment regarding the inequitable conduct claim is granted without prejudice.

ENTER:

Joan B. Gottschall

United States District Judge

DATE: September 5, 2001